UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

RICHARD THOMAS GARDIPEE,

        Plaintiff,

  v.

RYAN CAVIL and
THE DETAIL SHOP,

        Defendant.

Case No. 18-cv-1314-pp

---

**ORDER GRANTING MOTION FOR LEAVE TO PROCEED WITHOUT PREPAYMENT OF THE FILING FEE (DKT. NO. 2), DENYING MOTION FOR RELIEF FROM VOID JUDGMENT (DKT. NO. 6), SCREENING COMPLAINT AND DISMISSING CASE**

---

On August 27, 2018, the plaintiff filed a complaint against defendants The Detail Shop (a towing company in Green Bay, Wisconsin) and its owner, Ryan Cavil. Dkt. No. 1. The complaint alleged that the defendants had violated the plaintiff's civil rights under 42 U.S.C. §1983. Id. at Dkt. No. 1. Along with the complaint, the plaintiff filed a motion asking the court to allow him to proceed with the case without prepaying the filing fee. Dkt. No. 2. On September 6, 2018, he filed a document entitled "Notice of Petition Demand to Court to Provide Relief from a Void Judgment CF. Federal Rule 60(B) Lack of Jurisdiction Emergency Motion for Prejudgment Writ of Replevin Without Notice." Dkt. No. 6. The court will waive the filing fee, but must dismiss the plaintiff's case because he has not stated a claim for which a federal court can grant relief.

1

**I.     Motion to Proceed Without Prepaying the Filing Fee (Dkt. No. 2)**

The court may allow someone to proceed without prepaying the filing fee if the person meets two conditions: (1) the person shows that he is unable to pay the filing fee; and (2) the case is not frivolous nor malicious, does not fail to state a claim on which relief may be granted, and does not seek monetary relief against a defendant that is immune from such relief. 28 U.S.C. §§1915(a) and (e)(2).

   A.     Plaintiff's Ability to Pay the Filing Fee

The plaintiff's request indicates that he is not employed, and that he has no income. Dkt. No. 2 at 1. He has written on the first page of the request form, "NO JOB and Homeless, NOT EMPLOYED and POOR Cannot Afford to pay costs." Id. In the section that asks him to list personal property (such as cars), he reports, "Nothing in my Possession." Id. at 2. He reports no dependents and no debt. Id.

The court has questions about the information the plaintiff put in his application. As discussed below, this lawsuit involves the plaintiff's allegation that his car and other possessions were taken by the defendants, so his statement that he doesn't have any assets in his possession, while possibly true at the moment, is misleading. The court concludes that he is not able to pay the filing fee. The plaintiff did not use the form on the court's web site, and so he did not report a good deal of the information the court needs to make fee waiver determinations. At this stage, however, the court will accept the

plaintiff's statements that he is homeless and has no income, and will find that he is not able to pay the filing fee.

    B.    <u>Whether the Complaint States a Claim for Which a Federal Court Can Grant Relief</u>

Although the plaintiff has shown that he is not able to pay the filing fee, the court still must dismiss a complaint if a plaintiff raises claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. §1915A(b). For this reason, district courts "screen" complaints filed by self-represented plaintiffs to determine whether it must dismiss the complaint under these standards.

    1.    *Legal Standard*

A claim is legally frivolous when "it lacks an arguable basis either in law or in fact." <u>Denton v. Hernandez</u>, 504 U.S. 25, 31 (1992); <u>Neitzke v. Williams</u>, 490 U.S. 319, 325 (1989). The court may, therefore dismiss a claim as frivolous where it "is based on an indisputably meritless legal theory" or where the "factual contentions are clearly baseless." <u>Neitzke</u>, 490 U.S. at 327. "Malicious," although sometimes treated as a synonym for "frivolous," "is more usefully construed as intended to harass." <u>Lindell v. McCallum</u>, 352 F.3d 1107, 1109-10 (7th Cir. 2003) (citations omitted).

To state a claim under the federal notice pleading system, a plaintiff must provide a "short and plain statement of the claim showing that [he] is entitled to relief[.]" Fed. R. Civ. P. 8(a)(2). A plaintiff does not need to plead every fact supporting his claims; he only has to "give the defendant fair notice

3

of what the . . . claim is and the grounds upon which it rests." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)). That said, a complaint that offers only "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 555). Rather, a complaint must contain sufficient factual matter, accepted as true, that is plausible on its face." Id. (quoting Twombly, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (citing Twombly, 550 U.S. at 556). The complaint allegations "must be enough to raise a right to relief above the speculative level." Twombly, 550 U.S. at 555 (citation omitted).

To state a claim under 42 U.S.C. §1983, a plaintiff must allege that: 1) someone deprived him of a right secured by the Constitution or laws of the United States; and 2) whoever deprived him of that right was acting under color of state law. Buchanan-Moore v. Cty. of Milwaukee, 570 F.3d 824, 827 (7th Cir. 2009) (citing Kramer v. Vill. of N. Fond du Lac, 384 F.3d 856, 861 (7th Cir. 2004)); see also Gomez v. Toledo, 446 U.S. 635, 640 (1980). The court gives a *pro se* plaintiff's allegations, "however inartfully pleaded," a liberal construction. See Erickson v. Pardus, 551 U.S. 89, 94 (2007) (quoting Estelle v. Gamble, 429 U.S. 97, 106 (1976)).

    2.    *Facts*

The plaintiff has named two defendants in his lawsuit—The Detail Shop, and its owner, Ryan Cavil. Dkt. No. 1 at 1. The complaint alleges that on May 19, 2018, Officer L. Gonnering of the Ashwaubenon Department of Public Safety ordered the defendants to deprive the plaintiff of his property without due process under the Fourteenth Amendment. Id. at 2. The plaintiff says that he warned the defendants not to deprive him of his vehicle and the property in it, but that they ignored those warnings and towed away his car (and the property inside). Id. at 3. He says that he tried several times to resolve the matter with the defendants, but that despite his warnings, they refused to return his property. Id. at 4. He alleges that the defendants did not have the authority to deprive him of his property. Id. at 5-6. The plaintiff says that the following items were inside the car at the time the defendants towed it: "clothing and personal property, but not limited to: cell phones, personal documents, debit cards, and birth certificate." Id. at 9. He indicates that he lived inside his car at the time it was towed; it was his home. Id. He asserts that the defendants demanded $150 from him in exchange for the return of the car and the property, but that he refused to give them money to get his property back. Id. at 11. He characterizes this request as "blackmail." Id. The plaintiff describes the towed property as a "2003 Chevrolet Cavalier silver two door (motor vehicle) priceless to owner but estimated worth is $2,384 clothing, cellphones, personal documents, birth certificate and other belongings inside of the motor vehicle estimated worth $1,299." Id. at 13.

The plaintiff attached to the complaint a copy of a municipal citation indicating that at 1:00 p.m. on May 19, 2018, Officer L. Gonnering personally cited the plaintiff for operating his vehicle after his license had been suspended. Dkt. No. 1-1. The citation reflects that the plaintiff drove his silver 2003 Chevrolet from Ridge Road to Valley View Road in the Village of Ashwaubenon (approximately 175 feet). Id. The citation informed the plaintiff that if he wanted to contest the citation, he could appear on June 27, 2018 at 6:00 p.m. at the Ashwaubenon Village Municipal Court. Id.

For relief, the plaintiff asks the court to order the defendants to release his car and property to him, id. at 8, and issue a judgment against the defendants of $50,500,000, id. at 10.

Several days after he filed his complaint, the plaintiff filed an affidavit. Dkt. No. 4. In this affidavit, he says that May 19, 2018 was a beautiful day, and that as he was driving down the road, he thought he'd go to the park and shoot some hoops. Id. at 4. He says he asked his passenger if the passenger knew of a good park with some good basketball courts. Id. His passenger (who he describes as his best friend and common-law wife, Tahnee Marie Bailey) said that she did know of such a place. Id. at 5. They almost had arrived at the park when the plaintiff noticed a police vehicle ahead of him at the stop light. Id. at 6. The plaintiff was waiting to make a left turn; as the light turned green, the plaintiff says, the police car "stopped in the middle of the street and made a turn that is not normal." Id. He reports that the police car put on its lights, and engaged him, "initiating an emergency traffic stop." Id. at 7. The plaintiff says

he pulled over right away, wondering what he'd done to get pulled over. Id. The officer approached, and told the plaintiff that he'd pulled the plaintiff over because his license plates had expired. Id. The plaintiff responded that he was not "a participant with the DMV (Department of Motor Vehicle)," and that he had a right to travel that was so basic, it didn't bear mentioning. Id. The officer asked to see "your drivers license and your identification;" the plaintiff says the officer was referring to Ms. Bailey. Id. The plaintiff responded, "No sir, I am not providing you with my personal information." Id. at 8. The officer told the plaintiff that if he didn't produce the information, the officer would arrest him, so the plaintiff gave the officer his name and date of birth. Ms. Bailey also provided her information. Id.

The officer went to his police car for a few minutes, then returned and said he was going to take the plates off the plaintiff's car, because they'd expired. Id. The plaintiff reports that he responded, "No you are not! . . . That is my property! You are not taking my property!" Id. According to the plaintiff, the officer responded that the plates belonged to the DMV; the plaintiff vigorously disagreed, arguing that because he'd paid for the plates, they belonged to him. Id. The officer told the plaintiff that he did not care, that he was removing the plates and towing the car; at this point, another police car pulled up. Id. at 8-9. The plaintiff explains that he told the officer that he was homeless, that his car was his home and that all of his property was in the car. Id. at 9. The plaintiff says the officer again said that he didn't care. The plaintiff alleges that he told the officer that he had no right to take the car. Id. He says that the officer

7

responded, "You have expired plates and you don't have a valid drivers license and you don't have any rights," and handed him several pieces of paper (including the citation). Id. The officer told the plaintiff that if he did not appear on the date listed on the citation, a warrant would issue for the plaintiff's arrest. Id. The plaintiff indicated that he had been "pulled over about a dozen other times all across the state of Wisconsin by different officers and [he had] never and [he] repeat[ed] never [had] been treated so horribly." Id. at 9-10.

The officer in the second squad took a screw driver and removed the plaintiff's license plates. Id. at 10. Then a tow truck arrived and backed up to the plaintiff's car. The plaintiff says he pulled out his cell phone and started recording. Id. at 11. He reports that Officer Gonnering (the officer who'd pulled him over and given him the citation) yelled at him to get out of the car immediately; the plaintiff and his wife got out of the car "without grabbing anything out of the car." Id. As they got out, the plaintiff says, the "detail shop employee" told him to leave the keys in the ignition. Id. The plaintiff says he told this employee that he did not have permission to tow the vehicle, but the employee responded that the officer had told him to tow the car, and that he was just doing his job. Id. The plaintiff says he told the employee that if he took the car, it would be stealing, and that the plaintiff would take him to court. Id. at 12. The employee "replied I don't care and handed [the plaintiff] his business card then walked away, and started the towing process." Id. The plaintiff says that while this was going on, Officer Gonnring was just sitting in his car, grinning. Id. The plaintiff says he "immediately got on his cell phone" and

8

called the Ashwaubenon police department, and asked to speak to a lieutenant. Id. The plaintiff told the lieutenant what had just happened, and how the officer did not have the authority to take his car. Id. at 12-13. He says that the lieutenant responded by saying that the officer did not do anything wrong, and had done everything correctly; the lieutenant told the plaintiff that it was the plaintiff's fault that he had expired plates and a suspended license. Id. at 13. The plaintiff says that he then "explained to the lieutenant the Supremacy Clause Article 6 Clause 2 of the United States Constitution and explained to him that the Constitute of the United States is the supreme law of the land, and that federal law trumps state law." Id. After some further argument, the lieutenant hung up on the plaintiff. Id.

The plaintiff next called the tow shop. Id. at 14. He says that he asked to speak to the owner, "who got on the phone and identified himself to be Ryan Cavil." Id. at 15. The plaintiff told defendant Cavil that one of Cavil's employees had just taken the plaintiff's property without authority, and that if the plaintiff didn't get his property back right away, he'd start filing an affidavit. Id. Cavil asked to think about it and then call the plaintiff back. Id. About a half hour later, Cavil called the plaintiff back, and said that he'd thought about what the plaintiff had said. Id. Cavil indicated that he would not charge the plaintiff any storage fees, and would drop the car off to the plaintiff at any address within a reasonable distance for $150. Id. The plaintiff says that he talked with Cavil "for about an hour," as the plaintiff told Cavil all about the plaintiff's constitutional rights and Supreme Court decisions. Id. at 15-16. Cavil told the

9

plaintiff that under Wisconsin law, the plaintiff could come and retrieve his belongings from inside the car, but that once he did, the car "would then be considered abandoned" and Cavil could do whatever he wanted with the car. Id. at 16. There was more arguing about each side's views of the state of the law, and then the plaintiff hung up. Id. at 16-17.

The plaintiff asserted that "over the past few months,"[1] he has called and spoken to Cavil "numerous times," and warned Cavil "time and time again that he was depriving [the plaintiff] of [his] property." Id. at 17. He told Cavil that he was homeless, and threatened Cavil with a civil lawsuit. Id. The plaintiff asserts that he has suffered greatly from the defendants' deprivation of his property. Id. at 17-21.

    3.    *Analysis*

In his complaint, the plaintiff alleges that The Detail Shop and Ryan Cavil violated his constitutional right to due process under the Fourteenth Amendment, in violation of 42 U.S.C. §1983. In the affidavit he filed ten days later, the plaintiff also says that the defendants conspired to interfere with his civil rights in violation of 42 U.S.C. §1985, and violated 42 U.S.C. §1986 "for neglect to prevent." Dkt. No. 1-1 at 21.

Section 1983 prohibits any person acting "under color of state law" from violating another person's constitutional rights. For a person to act "under color of state law," the person must "have exercised power 'possessed by virtue of state law and made possible only because the wrongdoer is clothes with the

---

[1] The defendants towed the plaintiff's car on May 19, 2018, and he filed his affidavit on September 6, 2018—not quite four months later.

authority of state law.'" West v. Atkins, 487 U.S. 42, 49 (1988) (quoting United States v. Classic, 313 U.S. 299, 326 (1941)). This means that §1983 generally applies to government officers or employees; "the under-color-of-state-law element of § 1983 excludes from its reach '"merely private conduct, no matter how discriminatory or wrongful."'" American Mfrs. Mut. Ins. Co. v. Sullivan, 526 US. 40, 50 (1999) (quoting Blum v. Yaretsky, 457 U.S. 991, 1002 (1982)). Neither The Detail Shop nor Ryan Cavil are government officials or employees.

There are two situations in which a private citizen may fall under the ambit of §1983, even though it is limited to official acts by people acting under color of state law. If a private citizen conspires with a public employee to deprive the plaintiff of his constitutional rights, the citizen may be liable under §1983. The citizen also may be liable if the government official made the private citizen a sort of temporary government official. Proffitt v. Ridgway, 279 F.3d 503, 507 (7th Cir. 2002).

"For an individual to act under color of law, there must be evidence of a *concerted effort* between a state actor and that individual." Fries v. Helsper, 146 F.3d 452, 457 (7th Cir. 1998) (citing Adickes v. S.H. Kress & Co., 398 U.S. 144, 152 (1970)) (emphasis in the original). "To establish § 1983 liability through a conspiracy theory, a plaintiff must demonstrate that: (1) a state official and private individual(s) reached an understanding to deprive the plaintiff of his constitutional rights; and (2) those individual(s) were '"willful participant[s] in joint activity with the State or its agents."'" Id. (citing Starnes v. Capital Cities Media, Inc., 39 F.3d 1394, 1397 (7th Cir. 1994); Adickes, 398 U.S. at 152)).

11

The plaintiff must show some "concerted effort or plan between the private party . . . and the state officials." Orange v. Burge, Case No. 04-c-168, 200 WL 4425427 at *5 (N.D. Ill. Sept. 25, 2008) (quoting Moore v. Marketplace Rest., Inc., 754 F.2d 1336, 1352 (7th Cir. 1985)).

The plaintiff has not alleged any concerted effort or plan between these private defendants and government officials to violate his constitutional rights. Taking as true the allegations in the plaintiff's affidavit, those facts demonstrate that the reason the towing company showed up, and the reason it towed the plaintiff's car, was because the police officers asked it to. The plaintiff does not allege that the officers told Ryan Cavil or anyone at The Detail Shop that they planned to violate the plaintiff's civil rights, or asked Ryan Cavil or anyone at The Detail Shop to help them violate the plaintiff's civil rights. The simple fact that the towing company towed the plaintiff's car at the police officers' direction is not a violation of §1983. See, *e.g.*, Williams v. Fenrich, Case No. 18-cv-458, 2018 WL 2416581 at *1 (E.D. Wis. May 29, 2018) ("It is not a violation of federal law for a towing company to tow a car at a police officer's direction.").

Nor were the defendants temporary state actors. The Seventh Circuit has noted that if, in an emergency, police officers deputized private citizens to act as temporary police officers, those private citizens could be considered as state actors under §1983. Proffitt, 279 F.3d at 507-508 (citing Soldal v. Cty. of Cook, 942 F.2d 1073, 1075 (7th Cir. 1991) (*en banc*)). But "the rendering of brief, ad hoc assistance to a public officer" does not transform a private citizen into a

state actor; if it did, that would discourage people from helping the police. Id. "To assist the police is a duty of citizenship; and the performance of a duty to someone does not turn the performer into that someone." Id. The plaintiff does not allege that the police deputized the towing company or its owner; he alleges that the towing company and its owner did what the police asked. That does not make them state actors.

The court also notes that the citation the plaintiff attached to his complaint indicates the plaintiff was cited for a village ordinance based on Wis. Stat. §343.44(1)(a). Dkt. No. 1-1. That statute prohibits a person from driving with a suspended license. And the statute allows for impoundment of a vehicle, if the person who violates the statute is the owner of the car he was operating. Wis. Stat. §343.44(4). The plaintiff does not dispute that his license was suspended, or that he was driving with a suspended license when Officer Gonnering stopped him. Rather, he states that he is "not a participant with the DMV" and has a right to travel. Dkt. No. 4 at 7. The plaintiff argues that the defendants took his car and property without due process, but the citation itself notes that there *was* a process—the plaintiff could appear at municipal court at the appointed date and time and challenge the citation.

The plaintiff makes several references to the Supremacy Clause of the Constitution. He is correct that Article VI, Section 2 of the United States Constitution says that the federal Constitution constitutes the supreme law of the land. What this means, however, is that courts "[m]ust not give effect to state laws that conflict with federal laws." Armstrong v. Exceptional Child

Center, Inc., ___ U.S. ___, 135 S. Ct. 1378, 1383 (2015) (citing Gibbons v. Ogden, 9 What. 1, 210 (1824)). The plaintiff has not alleged that Wis. Stat. §343.44 conflicts with federal law. And the Supremacy Clause is not the "source of any federal rights," and does not create a private right of action for citizens. Id. (quoting Golden State Transit Corp. v. Los Angeles, 493 U.S. 103, 207 (1989)). The Supremacy Clause does not more than "instruct[] courts what to do when state and federal law clash . . . ." Id.

While the plaintiff did not allege a violation of 42 U.S.C. §1985 in his complaint, he mentioned it in the affidavit. That statute prohibits two or more people from conspiring to deprive another person of his constitutional rights. 42 U.S.C. §1985(3). "Section 1985(3) applies to conspiracies to deprive a person of his or her civil rights on the basis of sex, ethnicity and religion." Williams v. Linguard, Case No. 02-c-472, 2003 WL 23164507 at *1 (W.D. Wis. Feb. 20, 2003) (citing Volk v. Coler, 845 F.2d 1422, 1434 (7th Cir. 1988)). It "requires proof of a racial or otherwise class-based discriminatory animus behind the conspirators' actions." Id. (citing Griffin v. Breckenridge, 403 U.S. 88 (1971); Hampton v. Hanrahan, 600 F.2d 600, 623 (7th Cir. 1979); Munson v. Friske, 754 F.2d 683, 694 (7th Cir. 1985)). The plaintiff has not alleged that the defendants acted against him because of his race or gender or religion.[2] He has not stated a claim under §1985(3).

---

[2] The plaintiff has alleged that the defendants took and held his car because he was poor. Even if this were true, poverty is not one of the classifications to which §1985(3) applies.

14

Finally, the plaintiff's affidavit also mentions 42 U.S.C. §1986, and says that the defendants neglected to intervene. Section 1986 says that anyone who knows that someone is about to commit a §1985 conspiracy and has "power to prevent or aid in preventing the commission of same," but neglects or refuses to do so, is liable. The court has found that the plaintiff has not stated a claim for conspiracy under §1985; without a viable §1985 claim, he does not have a claim for neglect to intervene under §1986. See Saldivar v. Cadena, 622 F. Supp. 949, 960 (W.D. Wis. 1985) ("Section 1986 is a derivative of § 1985; it merely provides a remedy for misprision of a violation of § 1985.") Further, the plaintiff has not alleged that the defendants—a towing company and its owner—had the "power to prevent" the police officers from having his car towed. The plaintiff has not stated a claim under §1986.

The plaintiff is very upset about the fact that his car was towed. That is clear from the wording of the complaint and the wording of the affidavit. It is clear from the facts that the plaintiff has called Judge Pepper's chambers almost daily in the last month, that he has called the chambers of the other judges in the Eastern District, that he has called the clerk's office, and that he has filed an action with the Seventh Circuit Court of Appeals entitled "Notice of Demand Non-Statutory Writ of Procedendo," asking that court to order Judge Pepper to render a judgment without further delay. Gardipee v. Pamela Pepper, Case No. 18-3064 (7th Cir.). The plaintiff wants the towing company to release his car and property to him immediately, and that is understandable. But he has not stated federal civil rights claims against Ryan Cavil and The Detail

15

Shop, which means that this court cannot provide him with the relief he seeks. He may be able to seek relief in other forums—the Ashwaubenon municipal court, or the Brown County Circuit Court—under different statutes. But he has not stated a claim against these defendants in this court, and the court will dismiss his complaint.

II. **Notice of Petition Demand to Court Provide Relief from a Void Judgment (Dkt. No. 6)**

The plaintiff also filed a motion asking the court to "perform its duty under the Supremacy Clause" to provide relief from a "void judgment cf. Federal Rule 60(B)(4)." Dkt. No. 6 at 1-2. He asks this court for "prejudgment writ of replevin without notice directing the defendants to immediately give him his vehicle and property inside his vehicle back on the plaintiff's complaint and sworn affidavit filed with this court." Id. at 2. The plaintiff states that a "void judgment"—apparently, the citation Officer Gonnering issued him on May 19, 2018[3]—is depriving him of his life, liberty and property, and asks the court to provide him relief from that "void judgment" under Fed. R. Civ. P. 60(b). Id. at 8.

The court is dismissing the plaintiff's complaint, and that makes this motion moot. Even if the court were not dismissing the complaint, the plaintiff does not have a private right of action under the Supremacy Clause. A municipal citation from a police officer is not a "judgment" as that word is used in Fed. R. Civ. P. 60(b)(4); a "judgment" is a final order entered by a *court*,

---

[3] The plaintiff claims that Officer Gonnering, Ryan Cavil and The Detail Shop issued the citation. Dkt. No. 6 at 10. That is not the case. Gonnering issued the citation; as the court has noted, Cavil and The Detail Shop are private citizens.

16

disposing of a case. See, e.g., Federal Election Com'n v. Al Salvi for Senate Committee, 205 F.3d 1015, 1019 (7th Cir. 2000). And Rule 60(b)(4) allows a court to relieve a party to a case of a judgment *in that case* if the judgment was void. The municipal citation Officer Gonnering issued is not a "judgment," and was not issued by a court in this case. Rule 60(b)(4) is not applicable.

The court will deny the motion for relief from a void judgment.

### III. Conclusion

The court **GRANTS** the plaintiff's motion to proceed without prepaying the filing fee. Dkt. No. 2. The court **WAIVES** the civil filing fee.

The court **DENIES** the plaintiff's motion for relief from void judgment. Dkt. No. 6.

The court **FINDS** that the complaint fails to state a claim against the defendants. The court **ORDERS** that the complaint is **DISMISSED**.

Dated in Milwaukee, Wisconsin this 1st day of October, 2018.

BY THE COURT:

_____
**HON. PAMELA PEPPER**
**United States District Judge**